907 F.2d 1137
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John DOE, Plaintiff-Appellant,
v.
RICHARD ROE # 1, Correctional Officer; Richard Roe # 2,
Correctional Officer; Richard Roe # 3, Correctional
Officer; Richard Roe # 4, Correctional Officer; Sergeant
Trent, Correctional Officer; J.T. Moore, Chief of Security,
Virginia State Penitentiary; Michael C. Samberg, Past
Warden, Department of Corrections; Raymond M. Muncy,
Warden, Virginia State Penitentiary; Toni V. Bair, Regional
Administrator, Department of Corrections; Edward C. Morris,
Director, Defendants-Appellees.
 No. 89-6817.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 3, 1990.
Decided June 4, 1990.
As Amended June 13, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert R. Merhige, Jr., Senior District Judge. (CA-89-15-R)
 Marvin D. Miller, Alexandria, Va., John G. McConnell, Richmond, Va., for appellant.
 Mary Sue Terry, Attorney General, Jeanette D. Rogers, Assistant Attorney General, Robert H. Herring, Jr., Assistant Attorney General, Richmond, Va., for appellees.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 John Doe, a prisoner at the Virginia State Penitentiary, appeals from an order of the district court granting defendants' motion for summary judgment in Doe's 42 U.S.C. Sec. 1983 action. Doe seeks damages for personal injuries suffered as a result of defendants' alleged "deliberate indifference" to a specific risk of harm to him. We find no error; accordingly, we affirm.
 
 I.
 
 2
 On January 11, 1987, appellant Doe, along with over one hundred other inmates, was incarcerated in the southwest wing of B-Building at the Virginia State Penitentiary. During the recreation period, when the inmates were permitted out of their cells into the yard, there was a stabbing. The victim, Gary Cooper, went to the doorway of the yard and alerted the door officer. The control cage officer, E.N. Batts, opened the door to allow Cooper to leave the yard, and sounded a "10-33" alarm on his radio. The "10-33" code alerts all available security personnel to come to the location of the calling officer. At this time, a full complement of staff was on duty.
 
 
 3
 The officer in charge of B-Building, Sergeant Dennis Trent, arrived as Cooper was being taken down the exit hallway from the building. Trent immediately ordered a lockdown[1] of the southwest wing. Because a lockdown is standard procedure following a 10-33 alarm, the correctional officers on hand had already begun this step before Trent's order.
 
 
 4
 Trent then took charge of the injured Cooper. When the pair arrived at the infirmary, Cooper identified his attacker as inmate J. Farrell. Trent briefly reported the incident to his superior officer, and quickly returned to B-Building to secure Farrell.
 
 
 5
 Meanwhile, the lockdown was continuing. Officer Batts had blown a whistle and announced the lockdown via loudspeakers. In accordance with standard procedure, the officers would secure an entire tier before moving on to another.[2] While the officers were securing the second tier, Doe approached them saying that he had been "hit." Trent arrived back from the infirmary at about the same time. Trent helped Doe into the cage, where Doe reported that Farrell had stabbed him. Trent escorted Doe to the infirmary.
 
 
 6
 By the time Trent returned to the wing, it was completely locked down. Farrell was in his cell on the second tier. He later admitted that he stabbed Cooper and Doe because they had tried to rob him.
 
 
 7
 Doe[3] filed this action on January 9, 1989. He sought damages pursuant to 42 U.S.C. Sec. 1983 for the alleged "deliberate indifference" of prison personnel to a risk of harm posed to him by inmate Farrell. In addition, he sought declaratory relief pursuant to 28 U.S.C. Secs. 2201-2202. As defendants, he named four unidentified guards, Trent, Chief of Security J.T. Moore, previous Warden Michael Samberg, current Warden Raymond Muncy, Regional Corrections Administrator Toni Bair, and Director of Corrections Edward Morris.
 
 
 8
 On March 14, 1989, the district court entered a pretrial order setting the case for trial on July 11, 1989, and scheduling motion and discovery deadlines accordingly. On May 11, 1989, the defendants moved for summary judgment or to drop certain defendants. On June 7, Doe responded to the motion. On June 13, the court scheduled the motion for argument on June 26. Meanwhile, the parties were engaged in discovery skirmishes. Facing a discovery deadline of June 20, defendants deposed Doe on June 13, and Doe deposed Trent and Batts on June 15. Defendants' counsel instructed the defendants Moore, Samberg, Muncy, Bair, and Morris not to appear for deposition. Consequently, plaintiff moved to compel discovery. After a telephone call to the judge, the motion to compel and possible resulting depositions were deferred until the June 26 hearing.
 
 
 9
 At the June 26 hearing, Doe's counsel expressed surprise that the motion for summary judgment was to be heard. He apparently concluded from the scheduling of possible depositions on that day that the motion for summary judgment would be rescheduled. The court reminded counsel that the case was set for trial in two weeks, and proceeded to hear arguments on the summary judgment motion. The court granted defendants' motion the next day, June 27, 1989. Plaintiff's motion for reconsideration was denied August 18, 1989, and this appeal followed.
 
 II.
 
 10
 On appeal, Doe argues that he did not receive adequate notice of the hearing of appellees' motion for summary judgment, he was denied relevant discovery, and there were substantial issues of material fact that precluded summary judgment against him.
 
 
 11
 Doe's threshold argument is that he did not have the ten-day notice of hearing of motions for summary judgment required by Fed.R.Civ.P. 56(c). He admits that he knew of the June 26 hearing on June 14; however, he argues that the court's later deferral of a discovery dispute to that same date necessarily implied that the summary judgment motion would not be heard then. This implication apparently occurred only to plaintiff's counsel. Though we do not doubt the sincerity of his misapprehension, it is evident that Doe had actual notice of the hearing within the time limits set by Rule 56(c).
 
 III.
 
 12
 Next, Doe argues that summary judgment was inappropriate because he had not completed all relevant discovery. This "relevant" discovery related to a new, unpleaded theory of his case: that Doe's injuries resulted from a failure to adequately train the security personnel at the prison. In support of this theory, Doe relies on City of Canton v. Harris, 109 S.Ct. 1197 (1989), the latest in a line of cases involving local governments and officers who have been permitted to be sued in their official capacities under a "failure to train" theory. The district court refused to consider this new theory, because the case had been pending for nearly six months and was set for trial within two weeks, and because the officers would be prejudiced by preparing to defend against a new cause of action at that late date. Moreover, the district court doubted that the Eleventh Amendment would permit a City of Canton-type action against state officials. See Will v. Michigan, 109 S.Ct. 2304 (1989). Inasmuch as the discovery denied Doe was "relevant" only to the "failure to train" theory, its omission did not make summary judgment inappropriate.
 
 IV.
 
 13
 We next turn to the merits of the motion for summary judgment itself. Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. The party opposing summary judgment must allege specific facts demonstrating a material triable issue. Anderson v. Liberty Lobby, 477 U.S. 1134 (1986). Isolated disputes of fact are not enough; the opposing party must make a sufficient showing that he will establish the existence of all essential elements of his case. Otherwise, summary judgment against him is proper. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 
 14
 Doe's cause of action rests on the Eighth Amendment. A prisoner has a constitutional right "to be reasonably protected from the constant threat of violence and sexual assault from his fellow inmates...." Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir.1973). However, the Eighth Amendment protects an inmate from harm from other inmates only if prison officials are deliberately indifferent to a specific, known risk of harm to the injured inmate. Doe does not argue that prison officials had any reason to suspect that Farrell would harm him. Indeed, Farrell was not on Doe's or Cooper's "enemy list", and guards observed them "hanging out together" often, with no previous violence.
 
 
 15
 Instead, Doe's theory is that Farrell, an inmate with a violent history, was a "specific risk" of harm to everyone in the wing. We have faced this postulation before.
 
 
 16
 It is not alleged ... that the defendants knew or had reason to know that Lowe posed a specific risk of harm to Ruefly.... In the absence of any such specific known risk of harm to Ruefly, we cannot say that the defendant violated the eighth amendment by failing to take precautions for Ruefly's safety.
 
 
 17
 Ruefly v. Landon, 825 F.2d 792, 794 (4th Cir.1987).
 
 
 18
 Doe argues that the officers failed to apprehend Farrell quickly enough, and that this failure rose to a level of deliberate indifference. This argument is specious. Trent learned of Farrell's identity as Cooper's assailant at the infirmary. When he arrived back at the wing, the lockdown was well under way and Doe had already been stabbed. Over one hundred inmates were roaming about the yard when Cooper was attacked. The officers, in a reasonable attempt to avert further violence, immediately began a lockdown. These actions seem to us to be eminently sensible. It is unfortunate that, because of the tier-by-tier lockdown procedure, Doe was stabbed before either he or Farrell was secured. Nonetheless, inasmuch as the officers did not initially know who the assailant was, and would not have suspected a specific risk of harm to Doe even if they had, Doe's allegations of "deliberate indifference" must fail.[4]
 
 V.
 
 19
 We find that Doe had ample notice of the hearing on defendants' motion for summary judgment, he was not denied relevant discovery, and summary judgment for defendants was proper. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court. Doe has also filed a motion to supplement the appendix. Because the materials he wishes us to consider were not in the record before the district court, Doe's motion to supplement the appendix is denied.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 A lockdown is simply the return of each inmate to his locked cell
 
 
 [2]
 In addition to ground level, B-Building has three tiers of cells
 
 
 [3]
 Fearing the consequences of identification, Doe sought and was granted permission to proceed under an alias
 
 
 [4]
 The district court also correctly rejected Doe's argument that Farrell's "violent history" made him a "pervasive risk" of harm to everyone in B-Building. Many of the inmates at the Virginia State Penitentiary have been convicted of crimes of violence, and complete prevention of inmate-on-inmate strife is impossible. "To follow the plaintiff's argument we would have to find that imprisoned felons are constitutionally entitled to more protection from crimes of violence than are law abiding citizens." Shrader v. White, 761 F.2d 975, 980 (4th Cir.1985)