Norma CAREY, individually and in her capacity as Administrator of the Estate of Warren Brad Carey, Plaintiff–Appellant,

v.

Jason HELTON, Corrections Officer; Knox County, Tennessee; and Tim Hutchison, Knox County Sheriff, Defendants–Appellees.

No. 01–5623.

United States Court of Appeals, Sixth Circuit.

July 2, 2003.

Before DAUGHTREY, GILMAN, and GIBSON,* Circuit Judges.

PER CURIAM.

The plaintiff, Norma Carey, filed this § 1983 action against Knox County, Knox County Sheriff Tim Hutchison in his official capacity, and against Officer Jason Helton, both individually and in his official capacity as a corrections officer of Knox County, alleging that the defendants violated the constitutional rights of her son, Warren Brad Carey, who died from heart failure while incarcerated in the Knox County jail. Specifically, Norma Carey claimed that Knox County's failure to train its officers properly to "recognize, handle, and appropriately apply force to mentally ill or emotionally disturbed" detainees caused Officer Helton to use excessive force against Warren Brad Carey, whose bipolar disorder and manic depression led him to resist wildly the officers' attempts to subdue him during the intake procedure and his eventual transfer to the jail's medical unit. Norma Carey also claimed that the county's failure to have an adequate policy respecting the treatment of mentally ill detainees led to the use of excessive force against Warren Brad Carey.

The district court granted summary judgment for the county and the two individual defendants in their official capacities on Norma Carey's policy claim because she offered "no significant probative evidence" that the county maintained "some affirmative policy" that led to the use of excessive force. The district court also granted summary judgment on Carey's failure-to-train claim on the ground that Carey had failed to present an issue of fact as to whether the defendant county was deliberately indifferent to the rights of mentally ill detainees. In this regard, the district court suggested (but did not decide) that Carey had provided insufficient evidence that the training given officers regarding the treatment of mentally ill detainees was in fact inadequate. Having entered judgment for the defendants in their official capacities on Carey's federal claim, the district court dismissed Carey's state law claims. Thereafter, the plaintiff voluntarily dismissed the claim against Officer Helton in his individual capacity.

On appeal, Carey argues that the district court's decision was in error for a number of reasons, including the district court's failure to apply the appropriate summary judgment standards. We find no error and affirm.

The facts of this case are adequately set out in the district court's able opinion and need not be repeated in detail here. In summary, the record shows that Brad Carey had been arrested for reckless driving and disorderly conduct when he came in contact with Officer Helton during the intake process at the Knox County jail. Unbeknown to the Knoxville officers, Carey was psychotic at the time, suffering through a manic period, and at the jail he became highly uncooperative and self-destructive, banging his head against a plexiglass wall. To subdue Carey, Helton admittedly delivered a series of knee strikes—Helton says he aimed the blows at Carey's legs in an attempt to bring him

* The Hon. John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

down, but the plaintiff alleges that the blows landed on the upper part of Carey's body. After Carey was put in his cell, the jail officials received a call from his mother, explaining that her son was mentally ill and had been off his medication for a matter of weeks. As a result, the officer on duty directed the jail staff to move Carey to the medical unit for observation and evaluation. Carey, predictably, resisted and again had to be subdued. Once in the medical unit, he was in such obvious physical distress that an emergency call was issued to transport Carey to the hospital. When the emergency medical personnel arrived, Carey was unconscious, had no pulse, and had no discernible heartbeat. He was pronounced dead the following day, from a heart attack. The medical examiner concluded that Carey had died of natural causes associated with atherosclerotic heart disease, commonly referred to as hardening of the arteries. The autopsy report also noted the presence of various injuries, contusions, and abrasions to the decedent's chest, head, and face. The plaintiff offered the testimony of a former state medical examiner, who speculated, based on the autopsy report, that Brad Carey's death was actually caused by the blows that he received while struggling with officers, which "caused his blood pressure to go up," in turn causing

> ... transient hypertension, which caused at least one of the capillaries or small blood vessels running through the plaque to rupture causing acute hemorrhage, bleeding, into the plaque, and the plaque swelled because of this accumulation of blood, and the swollen plaque blocked the lumen or the hole through which blood runs in the center of the artery such that blood did not flow to the heart muscle that it needed to and it caused the heart muscle to have a shortage of oxygen and to become ischemic; that is, to show changes consistent with loss of oxygen, and caused the initial

phases of a heart attack, and that this heart attack in and of itself is the immediate cause of his death.

This witness did not think that the decedent's manic activity alone could have elevated his blood pressure high enough to cause his death, and although he opined that Brad Carey's heart attack was ultimately the result of "blunt trauma," it is not clear from the record how he was able to distinquish between Carey's self-inflicted injuries, those necessarily suffered as he resisted the actions of the officers, and those alleged to have been the product of excessive force.

We conclude without hesitation that the district court was legally correct in granting summary judgment to the defendants on Norma Carey's claims against the county and the other two defendants in their official capacities, because the plaintiff offered no significant probative evidence that the county maintained an affirmative policy regarding the handling of mentally ill detainees that led to the use of excessive force against the decedent. Moreover, despite the fact that the plaintiff's failure-to-train claim presents a closer question, we agree with the district court's holding that the record fails to establish an issue of fact as to whether the county was liable under the standard set out in *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Because a plaintiff cannot rely on *respondeat superior* to hold a municipality liable under § 1983, *see Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), she must show that the municipality's policy (or lack thereof) was a "moving force" in the deprivation of the plaintiff's rights and arose from "deliberate indifference" to the plaintiff's rights. *See Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 508 (6th Cir.1996). Likewise, to pre-

vail on a failure-to-train claim under § 1983, the plaintiff must prove: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989). Liability cannot be imposed unless "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [governmental body] can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412.

On the question of adequacy of training, the defendants presented the testimony that Knox County followed the guidelines of the Tennessee Corrections Institute dealing with special needs inmates, which included treatment of emotionally or psychologically disturbed persons. The defendants also produced an instructor's guide describing various psychological disorders that officers are likely to encounter in inmates and guidelines for handling mentally ill inmates. Norma Carey did not provide any evidence that directly refuted testimony that these instruction materials were in fact used. Although Officer Helton testified that he did not remember any training specifically regarding mentally ill detainees, such testimony, standing alone, has been held insufficient to defeat summary judgment. *See Russo v. City of Cincinnati*, 953 F.2d 1036, 1049 (6th Cir.1992)(Wellford, J., concurring); *see also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir.1998) (upholding grant of summary judgment for defendants on failure-to-train claim where "[t]he record shows that all the officers had received extensive training" and noting that "[a]llegations that a particular officer was improperly trained are insufficient to prove

liability"); *City of Canton*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Likewise, the fact that Helton did not recognize that Carey was mentally ill, despite a number of glaring indications, does not, in itself, demonstrate that the *training* was inadequate. Finally, although an expert witness for the plaintiff testified that the training materials were inadequate, the district court properly disregarded this testimony as too conclusory to defeat summary judgment.

■ Even if we were to find that the plaintiff had created a genuine issue of material fact as to the adequacy of the county's training, the district court correctly concluded that the plaintiff failed to produce sufficient evidence to create an issue "as to whether Knox County could be deemed to be callous and indifferent to the need for training on the handling of mentally ill inmates." The district court rested its conclusion in part on the fact that no evidence had been presented regarding a pattern of similar violations in the past by the department, nor any evidence that Helton was prone to using excessive force against mentally ill inmates or inmates in general.

As to the third factor, the district court did not directly address the issue of causation. But neither did the plaintiff. Although she asserts on appeal that inadequate training regarding mentally ill inmates caused Helton's use of excessive force against Carey, she has not spelled out in the district court or in her brief before this court her theory regarding a crucial question in the causation chain: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *City of Canton*, 489 U.S.

at 391. This deficiency alone would establish a sufficient basis for the entry of summary judgment in favor of the defendants.

Finally, we find no error in the district court's order dismissing the plaintiff's state claims. The decision whether to exercise supplemental jurisdiction over a plaintiff's state law claims rests within the discretion of the district court and will be reversed only for abuse of discretion. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279–80 (6th Cir.2000). None appears in the record before us.

For the reasons set out above, as well as the reasons stated in the district court's memorandum opinion filed on April 19, 2001, we AFFIRM the order granting summary judgment to the defendants.