[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11620
_____

D.C. Docket No. 1:09-cv-00026-JOF

TERRANCE HAZELTON,
Mother of Joshua Hazelton, deceased,
LOQUEN FELICIA HAZELTON,
Administrator of the Estate of Joshua
Hazelton, deceased,

Plaintiffs - Appellants,

versus

DEKALB COUNTY, GEORGIA,
TOM BROWN,
Sheriff, DeKalb County Sheriff's Office,
individually and in his official capacity,
TERRY MOBLEY,
individually and in his official capacity as
Detention Officer, DeKalb County, Georgia,
IVEY HEYLIGER,
individually and in his official capacity as
Detention Officer, DeKalb County, Georgia,
DANLEY WATT,
individually and in his official capacity as
Detention Officer, DeKalb County, Georgia, et al.,

Defendants - Appellees,

CORRECTHEALTH LLC,
a Georgia Limited Liability Corporation, et al.,

                                                    Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 9, 2012)

Before DUBINA, Chief Judge, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

This lawsuit arises from the death of a 19-year-old pretrial detainee, Joshua Hazelton, in the DeKalb County, Georgia jail.  His mother and the administrator of his estate filed a 42 U.S.C. § 1983 action against three jail officers who were on duty around the time that he died, the sheriff, the county, and the contractor that provided health care services to inmates in the jail, alleging a violation of Hazelton's constitutional rights and asserting several state law tort and contract claims.  The plaintiffs claimed that the jail officers were deliberately indifferent to the risk that Hazelton would commit suicide.  They also claimed that the county had policies and customs that caused his death and that he committed suicide because of undiagnosed schizophrenia.  The defendants answered that Hazelton died of natural causes and argue that, even if he did commit suicide, they did not

2

violate his constitutional rights.  The district court granted summary judgment to the defendants on the § 1983 claims and declined to exercise pendent jurisdiction over the state law claims.  This is the plaintiffs' appeal.[1]

## I.

Hazelton arrived at the DeKalb County, Georgia jail on January 24, 2006 to await trial on charges of murder.  Upon arrival he received an initial medical screening, which was negative for mental health issues, and was assigned to the general population.  Hazelton was first seen by the jail's mental health staff in February 2006, and between that first evaluation and his death in January 2007 he was evaluated by that staff on at least eleven separate occasions.  Three of the mental health staff members who evaluated Hazelton concluded that he was malingering, and one staff member believed that he was "attempting to avoid potential consequences in court."  In June 2006, however, a jail psychiatrist diagnosed Hazelton with "psychiatric disorder, not otherwise specified" and prescribed anti-psychotic medication for him.

In September 2006, Hazelton told a jail social worker that he had cut himself on the arm to appear suicidal, but admitted that he had never actually felt suicidal. In October, jail officials placed Hazelton on suicide watch because he had stated

---

[1] The plaintiffs appeal the grant of summary judgment on their § 1983 claims only as to the three jail officers and the county.  Their claims against the sheriff and the contractor and their state law claims are not before us.

that he wanted to hurt himself, although he later said he had made that statement only because he wanted to get away from some inmates with whom he had a disagreement. Also in October, a DeKalb County Superior Court judge declared Hazelton incompetent to stand trial and ordered his transfer to Georgia Regional Hospital. Hazelton was awaiting that transfer at the time of his death.

On the night of January 8, 2007 and in the early morning hours of January 9, Hazelton was housed in Eight Northwest, a maximum security area of the jail. Two officers were assigned to the overnight shift: defendants Danley Watt and Ivey Heyliger. During their shifts, both officers conducted periodic watch tours by entering the pods containing the cells where the inmates were housed. Neither officer noticed anything out of the ordinary about Hazelton; he appeared to be asleep. When the next shift started, another officer, defendant Terry Mobley, relieved Officers Watt and Heyliger and conducted a watch tour during the morning of January 9. Officer Mobley noticed nothing out of the ordinary and believed that Hazelton was asleep. Hours later, a fourth officer, who is not a defendant in this case, discovered that Hazelton, who was lying on his back on his bed, was actually dead.

None of the officers on duty at Eight Northwest around the time Hazelton died had access to Hazelton's medical records. None of them knew about his

4

mental health issues or had been informed that a judge had declared him incompetent to stand trial. None of them had any information that suggested that he was a suicide risk.

## II.

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all inferences in favor of the non-moving party, in this case the plaintiffs. Croom v. Balkwill, 645 F.3d 1240, 1245 (11th Cir. 2011). There is enough evidence to support a reasonable inference that Hazelton committed suicide, and for purposes of this appeal we will assume that he did.

## A.

To prevail on a § 1983 action arising from a jail suicide, the plaintiffs must prove that the jail officers "displayed deliberate indifference to the prisoner's taking of his own life." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) (quotation marks omitted). To prove deliberate indifference, the plaintiffs must show that the officers "had (1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence." Id. (alterations and quotation marks omitted). Under our precedents, "deliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility

5

that the self-infliction of harm will occur." Id. (quotation marks omitted).

Here, there is no evidence that the jail officers who were on duty in Eight Northwest around the time Hazelton died knew that there was a strong likelihood that he would harm himself. None of them recalled any dealings with Hazelton in the past and they were all unaware that he had made suicidal statements before. None of them had access to his medical records or had any other way of knowing that he had a history of treatment for mental health issues or had been declared incompetent to stand trial. There was no reason for any of them to infer from where Hazelton was housed that he was a suicide risk; he was housed in a different area of the jail from the one where inmates who are suicide risks are held. And Hazelton did not say anything to any of them suggesting that he was contemplating suicide. Officer Watt even spoke with Hazelton twice in the hours before he died, and Hazelton did not mention that he was having any problems.

The plaintiffs contend that the officers are liable because during the investigation into Hazelton's death two inmates who had been housed in the same pod with him gave written statements that he had pressed his emergency button "a lot that night" and the officers did not respond. The officers testified that they were never alerted to the fact that Hazelton pressed his emergency button. But even if they were and chose not to respond, in order to survive summary judgment

6

the plaintiffs must present evidence that the officers deliberately disregarded a "strong likelihood . . . that the self-infliction of harm will occur." Id. (quotation marks omitted). Here, the plaintiffs have not met that burden. The uncontroverted record shows that inmates in the DeKalb County jail commonly press their emergency buttons for many different reasons, including for non-emergencies such as requesting tissue paper or reporting a problem with the toilet. At most, the plaintiffs have presented evidence from which a jury reasonably could conclude that the officers ignored Hazelton's emergency button, not that they deliberately disregarded a strong likelihood that he would harm himself.[2]

## B.

The plaintiffs also contend that the county is liable for Hazelton's death because it has constitutionally inadequate or deficient policies and customs for dealing with mentally ill and suicidal inmates and inmates who are declared incompetent to stand trial. To hold the county liable, the plaintiffs first have to show that Hazelton's constitutional or federally-protected rights were violated. See Garczynski v. Bradshaw, 573 F.3d 1158, 1170 (11th Cir. 2009) ("Analysis of a

---

[2] There is also some evidence that the officer defendants were written up for neglect of duty because they failed to ensure that Hazelton was breathing when they conducted their watch tours. The evidence indicates, however, that they contested those charges and received no punishment or sanction. In any event, the most that evidence would show is negligence, which is not enough to establish a violation of Hazelton's constitutional rights. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). And there is no evidence that if any of the officers had discovered that Hazelton had stopped breathing anything could have been done to save his life.

7

state entity's custom or policy is unnecessary . . . when no constitutional violation has occurred."). To the extent plaintiffs are arguing that the actions of individual defendant-officers caused constitutional deprivations, the district court has found and we have affirmed, that there are no such constitutional violations. Thus, in the absence of a constitutional violation, the county cannot be liable. See id. To the extent that plaintiffs are relying upon the absence or inadequacy of a county policy, to prevail a plaintiff must prove that the "need for ... [such policy] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205 (1989). In their appellate briefs, plaintiffs point to no evidence of such obvious need. We recall no such evidence in the record. Accordingly, the county is entitled to summary judgment. For these same reasons, the district court did not abuse its discretion in denying plaintiffs' motion for reconsideration.[3]

    **AFFIRMED.**

---

[3] Nothing in the M&M Report supports plaintiffs' claims that some county policy caused a constitutional violation.

8