Gilbert **COPPER** and Adele Norberg, Plaintiffs,

v.

**CITY OF FARGO** and Kevin Niemann, Defendants.

Civ. No. A3–93–130.

United States District Court, D. North Dakota, Southeastern Division.

April 11, 1995.

See also, 905 F.Supp. 680.

Thomas W. Condit, Condit & Dressing Co., L.P.A., Cincinnati, OH, and Peter B. Crary, Fargo, ND, for Plaintiffs.

Mike Miller, Solberg, Stewart, Miller, Johnson & Noack, Fargo, ND, for Defendants.

## SUPPLEMENTAL ORDER ADDRESSING MUNICIPAL LIABILITY

KLEIN, United States Magistrate Judge.

On December 30, 1994, this court ruled on the cross motions for summary judgment pending in this case. In its memorandum and order, the court found that the resolution of the parties' motions for summary judgment on the issue of municipal liability depended on the jury's finding of fact regarding defendant Kevin Niemann's awareness of plaintiffs' picketing route. Consequently, the court deferred ruling on the municipal liability issue pending a finding on that underlying fact.

Following the issuance of its memorandum and order, the court further considered whether it would resolve the municipal liability issue as a matter of law or whether it would submit the claims against the City of Fargo to the jury. Upon further review of the law and evidence in this case, the court found that it was not necessary to present the question of municipal liability to the jury. Instead, the court concluded that the liability of the City of Fargo rested on the same disputed fact as the liability of defendant Niemann. Consequently, prior to trial, the court notified the parties that it was prepared to rule on the municipal liability issue as a matter of law after the jury resolved the single underlying material question of fact remaining in this case—Niemann's awareness of plaintiffs' picketing route. The court's ruling on the municipal liability issue follows.

## I. PRETRIAL FINDINGS

In their amended complaint, plaintiffs allege that the City of Fargo failed to train and advise its police officers and that this failure constituted deliberate indifference to plaintiffs' clearly established constitutional rights. (First Amended Compl. at 5). In addition, plaintiffs claim that the City's failure to train and advise the officers was the direct and proximate cause of the deprivation of rights suffered by plaintiffs. (Id.). Further, plaintiffs contend that defendant Niemann's conduct was authorized, sanctioned, and ratified by city officials functioning at a policy-making level for the City of Fargo and that Niemann's actions were performed pursuant to official policies and customs of the City of Fargo. (Id. at 5–6). Therefore, plaintiffs allege that the City is liable for plaintiffs' damages.

In response to these allegations, defendants filed a motion for summary judgment arguing that the claims against the City of Fargo should be dismissed because the City's alleged failure to properly train and supervise the police officers did not amount to deliberate indifference to the rights of the picketers.

Section 1983 to title 42 of the United States Code provides a remedy against every person who, under color of state law, deprives another of constitutionally protected rights. 42 U.S.C.A. § 1983 (1994). The United States Supreme Court in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), found that Congress intended § 1983 to apply to municipalities and other local governmental entities. However, the Court in *Monell* and its progeny also noted that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. 'It is only when the "execution of the government's policy or custom ... inflicts the injury" that the municipality may be held liable under § 1983.' " *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989) (emphasis in original) (citations omitted).

The evidence before the court indicates that the City of Fargo implemented no specific policies, procedures or guidelines for the enforcement of Fargo's antipicketing ordi-

nance. (Depo. of Ronald Raftevold dated Apr. 18 & 20, 1994, at 10).

And where there is no official statement respecting specific police conduct, it will be difficult if not impossible to imply an official municipal policy directly authorizing conduct at odds with federal and state constitutions and laws.

Typically, therefore, claims of municipal liability for specific constitutional violations by police have had to seek municipal fault in other sources than direct authorizations by policymakers and the necessary causation between fault and violation in more attenuated connections than direct commands.

Two basic theories have emerged for imposing municipal liability in the more typical situation where fault and causation cannot be laid to a municipal policy "itself unconstitutional." The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers. A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example.

*Spell v. McDaniel,* 824 F.2d 1380, 1388–89 (4th Cir.1987) (citations omitted). In this case, plaintiffs argue, *inter alia,* the principal theory of failure by the City of Fargo to adequately train and advise its police officers.

In *Canton v. Harris,* the United States Supreme Court held that the inadequacy of police training may serve as the basis for § 1983 liability, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton,* 489 U.S. at 388, 109 S.Ct. at 1204 (footnote omitted). In order to prove their claim under a failure to train or instruct theory of municipal liability, plaintiffs must establish the following three elements:

(1) The city's training program was inadequate. *Canton,* 489 U.S. at 390, 109 S.Ct. at 1205.

(2) The city's " 'failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of the [plaintiffs].' " *Thelma D. by Delores A. v. Board of Educ.,* 934 F.2d 929, 934 (8th Cir.1991) (citation omitted). Specifically, plaintiffs must prove that the City of Fargo had notice that its training program was inadequate and likely to result in a violation of constitutional rights. *Id.* The plaintiffs may establish that the City or its policymakers had notice of a deficiency in its training program or procedures in one of two ways:

A. "[N]otice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Id.*

B. In situations where the need for training may not be obvious from the outset, "a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens. To establish deliberate indifference on such a claim, [plaintiffs] must show that the [City] had either actual or constructive notice of the inadequacy of its training program and failed to take remedial steps." *Id.* at 935.

(3) The City's failure to adequately train its police officers was a moving force behind the constitutional violation alleged by plaintiffs. *Canton,* 489 U.S. at 389, 109 S.Ct. at 1204; *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. In other words, "the identified deficiency in the city's training programs must be closely related to the ultimate injury." *Canton,* 489 U.S. at 391, 109 S.Ct. at 1205.

 In applying the elements of the *Canton* test, the first issue this court must consider is whether the City of Fargo's training program was inadequate to train its police officers to properly enforce the residential antipicketing ordinance. Chief of Police Ronald Raftevold, the top policymaking official responsible for the training and instruc-

tion of Fargo police officers,[1] testified that, to the best of his knowledge, there were no polices, procedures or guidelines for the enforcement of Fargo Municipal Code § 10–0802. (Depo. of Ronald Raftevold dated 4/18/94 and 4/20/94, at 10). The text of the ordinance was the only guidance available to police officers charged with enforcing the ordinance. (Id. at 10–11). In addition, Raftevold acknowledged that he had not read Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), and was not familiar with the contents or implications of the case prior to August 20, 1991. (Id. at 14–24, 30–43).

Furthermore, defendant Niemann, the officer who made the decision to arrest plaintiffs, testified that he could recall no written policy or guidelines for the enforcement of the Fargo residential antipicketing ordinance. (Depo. of Kevin Niemann dated 4/19/94 & 4/20/94, at 65). He also testified that he had heard the word "Frisby" and knew it referred to a case, but did not know which court decided the case, had not read the case and had not received any explanation of the Frisby opinion through the City of Fargo. (Id. at 90–91).

Additionally, the court notes that testimony from Niemann and Raftevold given in response to hypothetical questions during their depositions indicates that neither man understood the implications of Frisby before plaintiffs were arrested on August 20, 1991. (Id. at 52–97; Depo. of Chief Ronald Raftevold dated 4/20/94, at 36–43).

Upon review of the facts listed above and other evidence submitted in support of the motions for summary judgment, this court finds that no reasonable jury could conclude

that the training and instruction provided by the City of Fargo was adequate to enable Fargo police officers to respond properly to the recurring residential picketing situations with which they had to deal.

Next, the court must decide whether the City's failure to train its police officers evidences "deliberate indifference" to the rights of the plaintiffs. Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); Thelma D. by Delores A. v. Board of Educ., 934 F.2d 929, 934, (8th Cir. 1991) (citation omitted). In Canton v. Harris, the United States noted that plaintiffs can demonstrate deliberate indifference by establishing that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390, 109 S.Ct. at 1205.

Fargo Municipal Code § 10–0802, as written, did not clearly notify the Fargo police officers about the narrowing construction compelled by Frisby.[2] Yet, the text of the ordinance was the only guidance available to police officers who were charged with enforcing the ordinance. Therefore, it was incumbent upon the City of Fargo to instruct its police officers about the implications of this Supreme Court decision. Failure to instruct police officers that demonstrators could constitutionally picket in a residential neighborhood so long as their demonstration was not focused on and taking place solely in front of a single residence was almost certain to result in deprivation of constitutional rights

1. (Depo. of Ronald Raftevold dated 4/18/94 and 4/20/94, at 9–10).

2. Defendants claim that "[a]t the time of the arrests, there had been no legal challenge to Fargo's home picketing ordinance. There were no legal decisions interpreting the scope of the ordinance. No Court had held the ordinance unlawful and in fact, the United States Supreme Court in Frisby had held a similar ordinance to be constitutional." (Defs.' Br. in Support of Defs.' Mot. for Summ. J. at 14). Accordingly, defendants contend that the City of Fargo is not liable under § 1983.

While it is true that the Frisby Court found a Brookfield residential antipicketing ordinance constitutional on its face, it did so only after narrowly construing the ordinance to apply to limited situations. This court rejects the City of Fargo's suggestion that it apply the Frisby Court's ruling with regard to the facial validity of the antipicketing ordinance and at the same time ignore the narrow construction applied in Frisby and compelled by that opinion simply because the Court did not specifically address Fargo Municipal Ordinance § 10–0802. The facts in Frisby were analogous and therefore all of its principles are binding.

anytime police officers were tasked with enforcement of this ordinance. Accordingly, the court finds that the City's failure to train its police officers about the proper enforcement of the antipicketing ordinance was so likely to result in a violation of constitutional rights that the need for training was patently obvious. No reasonable jury could conclude otherwise. Notice of a deficiency in the City's training program must therefore be implied.

Finally, plaintiffs must demonstrate that the City of Fargo's failure to adequately train Niemann and its other police officers was a moving force behind the violation of plaintiffs' constitutional rights. In *Canton v. Harris,* the United States Supreme Court ruled that "for liability to attach in this circumstance the identified deficiency in the city's training program must be closely related to the ultimate injury." *Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Thus, plaintiffs must prove that the City of Fargo's failure to train and advise Niemann actually caused his indifference to plaintiffs' constitutional rights. *See id.* In deciding whether plaintiffs have met their burden of proof, this court must ask: "Would the injury have been avoided had the employee been trained under a program that was *not* deficient in the identified respect?" *Id.*

If the jury is persuaded by the plaintiff's version of the facts and concludes that Niemann possessed information about the scope and distance of the picketers' demonstration route before he arrested plaintiffs, the court finds that the City's failure to train its police officers was a "moving force" behind the violation of plaintiffs' constitutional rights. There is no evidence that Niemann was motivated by a purpose other than bringing offenders to justice. Consequently, this court must assume that if Niemann had known about the narrow construction compelled by *Frisby,* he would not have arrested plaintiffs. Thus, the deficiency in Fargo's training program was closely related to plaintiffs' injury. No reasonable jury could conclude that the City's failure to train Niemann was not a cause of plaintiffs' constitutional injury. Accordingly, if the jury is persuaded by the plaintiff's version of the facts and concludes that Niemann possessed information about the scope and distance of the picketers' demonstration route before he arrested plaintiffs, this court rules, as a matter of law, that the City of Fargo would be liable under § 1983 for damages resulting from the violation of plaintiffs' constitutional rights. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (noting that when the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' ").

Conversely, if the jury is persuaded by defendants' version of the facts and concludes that Niemann reasonably believed that plaintiffs had been demonstrating solely in front of the Gifford residence and that he was not aware that plaintiffs had been walking a picketing route, then the court finds that plaintiffs will have failed to make a showing sufficient to establish that the City of Fargo's policies were the "moving force" behind the alleged constitutional violations. *Id.* 489 U.S. at 389, 109 S.Ct. at 1204 (citations omitted). Pursuant to *Frisby,* municipalities may lawfully prohibit focused picketing taking place solely in front of a particular residence. *Frisby v. Schultz,* 487 U.S. 474, 483–88, 108 S.Ct. 2495, 2501–04, 101 L.Ed.2d 420 (1988). If the jury concludes that Niemann reasonably believed that plaintiffs had been demonstrating solely in front of the Gifford residence and that he was not aware that plaintiffs had been walking a picketing route, then training and advice about the implications of *Frisby* and the proper enforcement of Fargo Municipal Code § 10–0802 would not have affected Niemann's decision to arrest plaintiffs. Niemann would have arrested plaintiffs despite adequate training because Niemann's subjective perception of the events fell within the type of picketing legally prohibited under *Frisby.* If the picketers' demonstration actually had been limited to an area solely in front of the Gifford residence in accordance with Niemann's account of the events, plaintiffs' arrest would have been lawful and the adequacy of Niemann's training irrelevant. Consequently, the court finds that no reasonable jury

could conclude that the City of Fargo's alleged failure to train and advise its police officers about the proper enforcement of the residential antipicketing ordinance was the proximate cause of plaintiffs' injuries if the jury is persuaded by defendant Niemann's version of the events.

■ Next, plaintiffs argue that the City of Fargo is liable for plaintiffs' constitutional claims despite the lack of a close causal relationship between Niemann's inadequate training and plaintiffs' constitutional injury because the City of Fargo allegedly ratified Niemann's unconstitutional arrest of plaintiffs after learning about the extent of plaintiffs' picketing route. In response to plaintiffs' request for admissions, the City of Fargo admitted that defendant Niemann acted pursuant to the City's official policies, customs, practices, and procedures when he arrested plaintiffs. (Defs.' Response to Pls.' Request for Admissions, at 3–4). The City of Fargo also admitted that Niemann acted pursuant to his training and instruction as a City of Fargo police officer when he arrested plaintiffs. (Id. at 4). Plaintiffs argue that these admissions constitute endorsement or ratification of Niemann's unconstitutional conduct, automatically giving rise to municipal liability.

The court views the admissions signed by Raftevold only as an acknowledgement that the defendant police officers acted pursuant to existing policies and training, none of which specifically addressed the enforcement of the antipicketing ordinance or the implications of *Frisby*. The admissions are not the equivalent of an affirmative decision, cast in the form of a policy statement, to ignore training deficiencies or completely omit training about the proper enforcement of the residential antipicketing ordinance. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30, 108 S.Ct. 915, 925–27, 99 L.Ed.2d 107 (1988). This is not a case in which Chief Raftevold "could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower ranking official." *See id.* at 130, 108 S.Ct. at 927. Consequently, the court concludes that municipal liability premised on a ratification theory does not flow from the City's admissions.

In summary, if the jury is persuaded by defendants' version of the facts and concludes that Niemann reasonably believed that plaintiffs had been demonstrating solely in front of the Gifford residence and that he was not aware that plaintiffs had been walking a picketing route, then the court finds that the City of Fargo would not be liable under § 1983 for plaintiffs' constitutional claims. Accordingly, this court would then find in favor of defendant City of Fargo on the issue of municipal liability, as a matter of law.

## II. POST–TRIAL CONCLUSION

On January 10–13, 1995, the single remaining fact issue was tried to a jury. In a special verdict form, the court asked the jury to answer the following question:

> With regard to plaintiffs' claim against the City of Fargo, have plaintiffs met their burden of proving that Officer Niemann was aware, at the time of the arrest, that the plaintiffs had been walking a picketing route extending down the block beyond the Gifford residence, and that Officer Niemann did not reasonably believe that plaintiffs had been demonstrating solely in front of the Gifford residence?

The jury answered "no" to this interrogatory. Based on the jury's finding and the court's supplemental opinion on the issue of municipal liability set forth above, the court concludes that the City of Fargo is not liable under § 1983 for plaintiffs' constitutional claims.

Therefore, **IT IS ORDERED** that plaintiffs' complaint and cause of action against the City of Fargo be dismissed with prejudice.