[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 17, 2005
THOMAS K. KAHN
CLERK

No. 05-11389
Non-Argument Calendar

D. C. Docket No. 04-00328-CV-T-30MSS

CHRISTOPHER ADCOCK,
DONALD ADCOCK,
EVELYN ADCOCK,
JAMES LEHMANN,

Plaintiffs-Appellants,

versus

PAUL BACA,
GRADY JUDD,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

**(November 17, 2005)**

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Appellants challenge the district court's order dismissing their 42 U.S.C. § 1983 claims against Grady Judd, the Sheriff of Polk County, Florida, for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).[1]  On appeal, appellants contend that Sheriff Judd, as an elected public official, may be held liable under 42 U.S.C. § 1983 for the acts and negligence of his deputies because, under Florida law, the deputies act as "alter egos" of the sheriff.  The district court's order dismissing the amended complaint is subject to de novo review.  See Harris v. IVAX Corp., 182 F.3d 799, 803 (11th Cir. 1999).  After careful review of the record and the parties' briefs, we affirm.

Appellants' lawsuit was based on an altercation between Deputy Paul Baca, of the Polk County Sheriff's Office, and the appellants, who live directly across the street from Baca.[2]  According to the amended complaint, at approximately 2:35 a.m., on March 18, 2000, Baca, who was dressed in civilian clothes but was wearing a gun and vest, came to Appellants' house and questioned Appellants in a rude and

[1]  The original complaint named Sheriff Judd's predecessor, Lawrence Crow, as the defendant.  The district court subsequently entered an order substituting Sheriff Judd for Crow.

[2]  In the original complaint, Appellants sued both Judd and Baca for violations of their constitutional rights pursuant to 42 U.S.C. § 1983 and for assault and battery under Florida law. After the district court dismissed the complaint without prejudice and, over Judd's objection, granted leave to amend, the Appellants filed an amended complaint asserting the same claims but naming only Sheriff Judd as a defendant.  Only the dismissal of the § 1983 claim against Judd is at issue in this appeal.

aggressive manner, ordered them to step outside of their house, demanded personal information from Appellants, threatened Appellants with further detention if they did not provide the requested information, and ordered two of the male appellants to take their shirts off, purportedly for the purpose of determining if they had tattoos. Appellants also alleged that Deputy David Nason, who had been called to the scene by Baca, was standing next to his parked squad car in front of Appellants' house. In its order dismissing the initial complaint without prejudice, the district court described the altercation as "a one-time incident involving a dispute between neighbors."

The amended complaint alleged that Baca's conduct amounted to an illegal arrest and constituted a violation of Appellants' civil rights because Baca did not advise them of their right to counsel or right to remain silent and Nason remained next to his squad car, thereby "lend[ing] his authority to the acts of Baca." The district court concluded that the amended complaint failed to state a claim against Sheriff Judd because there is no respondeat superior liability under § 1983, citing our en banc decision in Marsh v. Butler County, Ala., 268 F.3d 1014, 1035 (11th Cir. 2001). Alternatively, the district court held that the § 1983 claim against Sheriff Judd failed because it contained no allegation that Deputy Baca acted pursuant to an

official custom or policy, relying on Monell v. Dept. of Social Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). This appeal followed.

When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents -- in this case, Polk County. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). As Appellants recognize, governmental entities, such as Polk County, cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior. See Monell, 436 U.S. at 694, 98 S. Ct. 2018. Instead, such entities may be held liable only for the execution of a governmental policy or custom. Id.; see also Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." (emphasis in original)).

It is well-settled that an entity can be held monetarily liable only through "'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,'" or "'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking body.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915, 923, 99 L. Ed. 2d 107 (1988)

4

(quoting Monell, 436 U.S. at 690-91, 98 S. Ct. at 2036)). Moreover, a governmental entity is not liable under § 1983, merely as a matter of respondeat superior, for constitutional injuries inflicted by its employees. Monell, 436 U.S. at 694, 98 S. Ct. at 2037-38.

In their brief, Appellants cite numerous Florida cases discussing the relationship between a sheriff and his or her deputies and argue that, apart from the prohibition against recovery under § 1983 on the basis of respondeat superior, Florida law provides an "alter ego" theory under which they can recover § 1983 damages. We are unpersuaded. In Brown v. Neumann, 188 F.3d 1289 (11th Cir. 1999), the plaintiffs brought a municipal liability claim under Monell based on arrests made by a deputy sheriff of Palm Beach County. The plaintiffs "concede[d] that the Deputy Sheriff was not carrying out the instructions of the Sheriff, that the Sheriff did not know about, ratify, or consent to the Deputy Sheriff's acts, and that there was no custom of unjustified arrests." Id. at 1290. Nonetheless, similar to Appellants' "alter ego" argument in the present case, the Brown plaintiffs maintained that Fla. Stat. § 30.07 effectively conferred final decisionmaking authority directly on deputy sheriffs for Monell purposes.[3] We rejected that argument, noting that "[t]he only reasonable

[3]Section 30.07 provides the following: "Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible." Fla. Stat. § 30.07.

5

interpretation" of § 30.07 "is that it does not put Deputy Sheriffs on a par with Sheriffs in terms of final policymaking authority, and that the power referred to encompasses merely those powers which the Sheriff chooses actually to delegate." Brown, 188 F.3d at 1291.

Given our consideration and rejection of the claim in Brown, that Florida law attaches liability for deputies' actions to a sheriff's office even in the absence of a Monell policy or custom, the district court correctly dismissed the amended complaint, pursuant to this Court's controlling law and Monell, for failure to state a claim and we affirm its refusal to attach Monell liability in this case.

**AFFIRMED.**