

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2007

# Jackson v. Wayne

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1605

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Jackson v. Wayne" (2007). *2007 Decisions.* Paper 1652.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1652

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1605
_____

CRYSTAL JACKSON,
                                    Appellant

v.

COUNTY OF WAYNE; WAYNE COUNTY
CHILDREN & YOUTH SERVICES

_____

On Appeal From the United States District Court
for the Middle District of Pennsylvania
(No. 02-cv-01729)
District Judge:  Honorable James M. Munley

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2007

Before: SCIRICA, *Chief Judge*, FUENTES and CHAGARES, *Circuit Judges*.

(Filed : February 7, 2007)
_____

OPINION OF THE COURT
_____

CHAGARES, *Circuit Judge*.

Plaintiff-appellant Crystal Jackson ("Jackson") appeals the order of the District Court granting summary judgment to defendant-appellee County of Wayne, Pennsylvania, acting through Wayne County Children and Youth Services[1] (the "County") on Jackson's 42 U.S.C. § 1983 claim that the County violated her Fourteenth Amendment right to substantive due process after placing her in a foster home where she was sexually abused by her foster father. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons expressed below, we will affirm.

I.

Because we write solely for the parties, we forgo a detailed recitation of the factual and legal background.

Jackson was born on December 12, 1982. She had a difficult childhood and started using drugs and alcohol at age of eleven. She attempted suicide in ninth grade and was in and out of mental hospitals, clinics and treatment centers.

On December 10, 1998, shortly before her sixteenth birthday, Jackson's parents relinquished their parental rights and Jackson was placed in the legal custody of the County. Jackson was initially admitted to Kids Peace National Center for Kids, where

[1] Wayne County Children and Youth Services is an agency of the County of Wayne. It is not a legal entity separate and apart from Wayne County. Therefore it is not a separate defendant. Any actions taken by Wayne County Children and Youth Services shall be imputed to the County of Wayne. See Harris v. Lehigh County Office of Children & Youth Servs., 418 F. Supp. 2d. 643, 646 n.1 (E.D. Pa. 2005).

she remained for approximately ten months. At the time, the County contracted with Juvenile Rehabilitation Services, Inc. ("JRS")[2] to provide child welfare services for children and youth, including foster care services. JRS was licensed by the Commonwealth of Pennsylvania and was responsible for performing all of the duties necessary to train foster parents and to monitor the children placed in foster care. In this regard, JRS was required to obtain criminal background checks on persons applying to become foster parents.

Sharon Wharburton ("Wharburton") and Victor Rosario ("Rosario"), an unmarried couple residing together, expressed their interest in becoming JRS foster parents. According to JRS's requirements, criminal background checks were performed on both by the Pennsylvania State Police. The police report, however, failed to uncover Rosario's prior criminal record.[3]

On March 8, 2000, Jackson was placed in the Wharburton-Rosario foster home where she remained until July 21, 2000. The County caseworker assigned to Jackson testified at her deposition that she visited Jackson at her foster home more than once during this period. (A600.) Likewise, Jackson testified at her deposition that she met

---

[2] JRS is not a party to this action.

[3] Rosario testified at his deposition that, in 1995, he was released on parole from a New York state drug conviction. Some time thereafter, he moved to Pennsylvania with Wharburton. Rosario admitted having "an extensive record of drug related crimes." (A510.) Apparently, Wharburton also has a criminal record, the nature of which is unknown.

with caseworkers from JRS on a weekly to biweekly basis, (A704), and also received telephone calls from County caseworkers. (A709.)

Sometime in April 2000, Rosario started to sexually abuse Jackson. According to Jackson, she and Rosario had sexual intercourse approximately ten times between April 2000 and June 2000. Jackson disclosed the abuse to JRS caseworkers on July 21, 2000, at which time the County was notified and she was immediately removed from the Wharburton-Rosario home.

## II.

Jackson instituted an action against the County claiming that the County violated her right to substantive due process. Essentially, Jackson alleged in the Complaint that, in contracting with JRS, the County acted with recklessness or gross negligence in failing to supervise JRS. According to Jackson, the County created a dangerous condition when it failed to perform its own background checks on Wharburton and Rosario. Jackson also alleged that by placing her with Wharburton and Rosario, the County failed to protect her in a manner shocking to the conscience. Finally, Jackson claimed that the County failed to properly train its caseworkers.

After discovery, the County moved for summary judgment. The District Court granted summary judgment to the County, concluding that Jackson failed to demonstrate a constitutional violation. The District Court found that Jackson provided evidence of mere negligence at best, which is an insufficient level of culpability for substantive due process liability to attach. Dismissing the failure to train claim, the District Court

4

concluded that failure to train only gives rise to constitutional liability if it causes an underlying constitutional violation, and Jackson did not establish a constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) ("[A] municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation.") (internal quotations omitted). Even if Jackson were able to demonstrate an underlying violation of her right to substantive due process, the District Court concluded that Jackson failed to establish a necessary element for municipal liability pursuant to Monell v. N.Y. Dept. of Social Servs., 436 U.S. 658 (1978); that is, the causal connection between the policy or custom and her alleged constitutional injury. Specifically, the District Court found that the articulated policy, contracting with an outside entity to perform the duty of placing foster children,[4] was a lawful municipal action and that Jackson failed to establish that this municipal action was "taken with 'deliberate indifference' as to its known or obvious consequences." (A10-11) (citing Board of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 397, 407 (1997)).

Jackson timely appealed.

III.

---

[4] Before the District Court at oral argument, Jackson also argued that foster care placement outside of Wayne County somehow violated her rights. The District Court noted that this argument was not developed in briefing and found it nonetheless lacking of any merit.

We review an order granting summary judgment *de novo*. <u>Nicini v. Morra</u>, 212 F.3d 798, 805 (3d Cir. 2000) (en banc). We apply the same standard as the District Court and view the record in the light most favorable to Jackson drawing all reasonable inferences in her favor. "We may affirm the District Court on any grounds supported by the record." <u>Id.</u> (citations omitted).

IV.

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (citing <u>Monell</u>, 436 U.S. at 694 (1978)). Where, as here, a plaintiff's alleged municipal action is facially lawful, the plaintiff must demonstrate that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." <u>Brown</u>, 520 U.S. at 407 (internal citation omitted). In the foster care context, we have applied the standard of deliberate indifference so as to shock the conscience to determine whether official actions rise to the level of constitutional harm. <u>See, e.g.</u>, <u>Nicini</u>, 212 F.3d at 810.

Jackson's sole issue on appeal is whether the District Court committed error in

rejecting her expert report, which cited instances of negligence on the part of the County. For example, Jackson's expert opined that "the County of Wayne deviated from the standard of care by placing Crystal Jackson in an unsafe and potentially abusive environment," (A786), and that "[the County] and its worker[5] [sic] deviated from the standard of care by not securing sufficient background information on the foster parents . . . ." (A787.)

Jackson argues that a fact finder could equate this evidence of negligence with deliberate indifference. We disagree and hold that the District Court correctly concluded that, as a matter of law, mere negligence such as was presented here, was insufficient to establish a constitutional violation. See Nicini, 212 F.3d 810-11. Not only did the expert report not provide sufficient evidence of deliberate indifference, but also the testimony of Jackson herself failed to establish such indifference. Jackson admitted that she was in contact with caseworkers from both the County and JRS. Jackson did not report the sexual assaults during her visits or telephone conversations with caseworkers. Jackson, albeit a minor, was nearly eighteen years old and "not of such tender years that [she] was unable to communicate this information." Id. at 813.


V.

Because Jackson has not pointed to evidence demonstrating the County's Monell

_____

[5] No employees of the County were sued in their individual capacities.

7

liability, we will affirm the District Court's order granting summary judgment to the

County.