[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11687
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 17, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-61536-CV-KAM

FRANZ A. WAKEFIELD,

Plaintiff-Appellant,

versus

CITY OF PEMBROKE PINES,
Broward County, Florida (Pembroke Pines Police
Department),

Defendant-Appellee,

DANIEL GIUSTINO,
Police Chief, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 17, 2008)**

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Franz A. Wakefield appeals the district court's order granting the City of Pembroke Pines' motion for summary judgment and denying his cross-motion for summary judgment as to his pro se 42 U.S.C. § 1983 claims of excessive force.

**I.**

Wakefield's § 1983 action is based on two separate instances, during which he alleges that City police officers unjustifiably pointed their guns at him. According to Wakefield, the officers' actions constitute excessive force and were the result of the City's policy and custom of arresting and abusing African-Americans. The first instance allegedly occurred on December 24, 2002,[1] at which time Wakefield claims that Officer Richard Barber pulled him over for running a red light and, without justification, held him at gunpoint. The second incident occurred in January 2004, after Wakefield called the police to request assistance in recovering some personal property from a self-storage business. According to Wakefield's complaint, Officers Barber and Desilva arrived and, without justification, pointed their guns at him for some time before eventually escorting

---

[1] Wakefield has apparently been inconsistent in reporting when this incident occurred, alleging at various times that the traffic stop was in November or December 2002. His second amended complaint, however, alleges that the traffic stop occurred on December 24, 2002, the day on which he was out shopping for a DVD that had been released for sale on that date.

him to the storage facility.

In December 2004, Wakefield submitted a complaint regarding the 2002 traffic stop to Sergeant Jacob. Wakefield could not name the officer involved in the 2002 incident at that time, nor did he mention the January 2004 incident. Jacob consulted the City's database that logs traffic stops and found that it did not indicate any query for Wakefield occurring during the relevant time period. Jacob also showed Wakefield a book containing photographs of City police officers, and Wakefield identified one officer who was not employed by the City at the time of the alleged incident and another officer who did not match the description Wakefield had initially provided. Wakefield later reported to Jacob that he believed that the officer involved in the 2002 traffic stop could have been "Keegan, Barber, or Light."

In February 2005, Wakefield also filed a complaint against Officers Barber and Desilva regarding the January 2004 incident at the storage facility. At that time, he also indicated that Officer Barber was the one who had initiated the 2002 traffic stop. After confirming that Officer Barber was not on duty on December 24, 2002, Sergeant Jacob informed Wakefield that the department did not plan to entertain either of his allegations and referred Wakefield to the Florida Department of Law Enforcement and the Federal Bureau of Investigations. Jacob later received

3

calls from two FDLE agents, who informed him that they did not plan to pursue Wakefield's complaints either.

Wakefield filed a complaint against the City in federal court, alleging that the officers' conduct "was clearly excessive in light of the circumstances existing at the time of the arrest" and seeking damages in the amount of $353,009,407.44.[2] Following extensive discovery, the City filed a motion for summary judgment, arguing that it could not be held liable under a theory of respondeat superior because Wakefield had failed to show that the incidents resulted from an officially adopted policy or custom. Wakefield responded to the City's motion, and also moved for summary judgment, alleging that the City had an illegal policy and custom of authorizing the use of excessive force against African-Americans, had improperly trained its officers, was grossly indifferent to police officers' abusive conduct, and had failed to take corrective actions upon learning of incidents of excessive force. Although the district court assumed that the incidents occurred as Wakefield alleged for purposes of deciding the motion, the court granted the City's motion for summary judgment and denied Wakefield's motion.

Wakefield reasserts his claims on appeal regarding the two alleged incidents

_____

[2] Wakefield also named several City police officers as individual defendants in his § 1983 complaint. The district court, however, dismissed the individual defendants because Wakefield failed to serve process on them. The City is, therefore, the only remaining defendant in the lawsuit.

4

with City police officers and contends that the incidents were driven by an official policy and custom authorizing the use of excessive force. He further argues that the City is not entitled to summary judgment because the police department failed to investigate and discipline officers who used such force. According to Wakefield, Sergeant Jacob misled him by telling him that Officer Barber did not work for the police force during the relevant time period, which caused him to incorrectly identify the officer involved in the 2002 traffic stop.

**II.**

This Court reviews <u>de novo</u> the district court's grant of summary judgment. <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1156 (11th Cir. 2005). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we view all of the facts in the light most favorable to the non-moving party. <u>Mercado</u>, 407 F.3d at 1156.

A municipality is subject to liability under § 1983 "if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489

5

(11th Cir. 1997) (quoting Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 690–94, 98 S. Ct. 2018, 2035–38 (1978)).  This Court has defined a "policy" as "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Id.  A "custom," on the other hand, "is a practice that is so settled and permanent that it takes on the force of law." Id.  To establish the liability of a municipality based on a custom, "it is generally necessary to show a persistent and widespread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to . . . the municipality.  Normally, random acts or isolated incidents are insufficient . . . ." Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) (citation omitted).

The Supreme Court has also made clear that "the inadequacy of police training may serve as a basis for § 1983 liability." City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989).  However, such liability attaches "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id.  This Court similarly has recognized that a municipality is liable under § 1983 if the plaintiff's injury was caused by a "pattern of improper training" of police officers, of which the municipality was aware and deliberately indifferent. Mercado, 407 F.3d at 1161.

6

**III.**

We conclude that the district court properly granted the City's motion for summary judgment. Even assuming, as the district court did, that the incidents occurred and that the officers' conduct constitutes excessive force, Wakefield has failed to create a genuine issue of material fact concerning the City's liability under § 1983.

Wakefield failed to submit any evidence that the City had an officially adopted policy authorizing the use of excessive force against African-Americans. In fact, the record demonstrates that the general orders of the police department instruct officers to "use the minimum amount of force necessary to control the subject," and to use deadly force only "as a last resort" if the offender poses a grave threat. The department's general orders further state that officers should draw their firearms in the line of duty only when necessary and should use reasonable care when doing so. Thus, despite Wakefield's assertions to the contrary, there is no genuine issue of material fact as to whether an official policy was a "moving force" behind his alleged constitutional deprivations. See Sewell, 117 F.3d at 489 (quoting Monell, 436 U.S. at 690–94, 98 S. Ct. at 2035–38).

Similarly, Wakefield failed to create a genuine issue of material fact concerning whether there was a "persistent and widespread practice" of City police

officers using excessive force.  See Church, 30 F.3d at 1345.  While Wakefield asserts that such a custom indeed exists, he principally replies upon his own two instances of alleged excessive force to support that assertion.   Two incidents, occurring approximately thirteen months apart, are insufficient to establish a custom.  See id. ("Normally, random acts or isolated incidents are insufficient . . . .").

Nor is Officer Barber's involvement in a use of force violation in 1995 during a police shooting sufficient by itself to establish a "persistent and widespread practice" in the police department as a whole.  See id.  Indeed, it is noteworthy that following the unrelated 1995 shooting incident, the City rejected the first recommended sanction of 120-hour suspension for Officer Barber and insisted on a harsher penalty.  Furthermore, Wakefield's assertion that the City police department employs substantially more Caucasian than African-American employees is not evidence that a custom of using excessive force against African-Americans exists.  Because Wakefield failed to establish "a practice that is so settled and permanent that it takes on the force of law," see Sewell, 117 F.3d at 489, the district court properly determined that there was no genuine issue of material fact regarding the existence of a City custom authorizing the use of

8

excessive force against African-Americans.[3]

Nor has Wakefield created a genuine issue of material fact as to whether the alleged incidents were the result of a "pattern of improper training" of police officers. See Mercado, 407 F.3d at 1161. The record establishes not only that the City had a formal policy concerning the use of excessive force, but also that Officers Barber and Desilva were aware of that policy. Furthermore, in its answer to interrogatories, the City stated that all of its officers receive mandatory use of force training and must complete extensive psychological and background checks. Thus, Wakefield has failed to put forth evidence of a "pattern of improper training" to which the City was deliberately indifferent. See id.

Finally, Wakefield's claims that Sergeant Jacob failed to adequately investigate his complaints and misled him concerning the identity of Officer Barber are insufficient to create a genuine issue of material fact as to the City's liability under § 1983. The record demonstrates that Jacob conducted a preliminary investigation of Wakefield's complaints and, based on the fact that

---

[3] Wakefield's brief to this Court also contains a chart, purporting to show that Officer Barber was involved in a number of complaints for misconduct during his nineteen years of service. Because Wakefield never submitted this evidence to the district court, however, it is not properly before this Court. See Selman v. Cobb County Sch. Dist., 449 F.3d 1320, 1332 (11th Cir. 2006) ("In deciding issues on appeal we consider only evidence that was part of the record before the district court."). In any event, the mere fact that nine complaints were made against Officer Barber over the course of nineteen years is not sufficient to establish "a persistent and widespread practice" of the City. See Church, 30 F.3d at 1345.

9

Officer Barber was not on duty at the time of the first alleged incident and that there was a lack of evidence regarding the second alleged incident, decided not to pursue a formal investigation. The same conclusion was later reached by two FDLE agents to whom Wakefield complained. In any event, Wakefield provides no evidence at all that any alleged failure by Jacob to sufficiently investigate was the result of a policy or custom of the City for which it can be held liable.

Because Wakefield failed to create a genuine issue of material fact about whether the two alleged incidents occurred as a result of an official policy or informal custom of the City, the district court property granted the City's motion for summary judgment.

**AFFIRMED.**