MEMORANDUM **
Because the parties are well aware of the facts of this case, the facts will not be repeated here. James Ward (“Ward”) appeals from the district court’s grant of summary judgment in favor of the San Diego Unified Port District (the “Port”) on his failure to train claim, due process claims, and equal protection claim, each of which stemmed from the seizure and destruction of a vessel known as the Castle, and the alleged seizure of the outriggers used for mobility of a vessel known as Neptune’s Palace. We affirm.
This Court reviews a district court’s grant of summary judgment de novo. Golden Gate Restaurant Ass’n v. City and County of San Francisco, 512 F.3d 1112, 1116 (9th Cir.2008) (citing Aguilera v. *185 Baca, 510 F.3d 1161, 1165-67 (9th Cir.2007)).
Ward’s failure to train claim fails as a matter of law. A failure to train can provide a basis for municipal liability only where it amounts to deliberate indifference to the rights of persons with whom the officials come in contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Price v. Sery, 513 F.3d 962, 973 (9th Cir.2008). In addition, “the identified deficiency in a city’s training program must be closely related to the ultimate injury .... [the plaintiff] must still prove that the deficiency in training actually caused the police officers’ indifference[.]” City of Canton, 489 U.S. at 391, 109 S.Ct. 1197.
The testimony regarding inadequate training by the Port was limited to the period of time of the mid-to-late 1980’s, and Corporal Martinez explained that targeting of a protected class between 1999 and 2002 was attributable to individual officers, and that the Port presently enforces ordinances evenhandedly. Therefore, this is insufficient to create a genuine issue of material fact that the Port acted with deliberate indifference.
Furthermore, Ward cannot not establish causation because there was no evidence that the Port knew of Ward’s interest in the Castle and targeted it because of his race. Instead, the evidence showed that the Port was attempting to clean up the bay and it removed numerous vessels for which there is no evidence of the race of the owners.
Ward’s due process claims also fail as a matter of law. With respect to the outriggers of Neptune’s Palace, even if the Port had seized the outriggers, there was no evidence that a policy decision maker seized the outriggers, or that seizure without notice was so pervasive that it could establish a custom. See Monell v. Dep’t of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (a municipality cannot be held liable on a respondeat superior theory, to find liability a plaintiff must prove that the unconstitutional acts were the product of an officially adopted policy statement, ordinance, regulation, or decision, or illustrative of a well-settled custom).
With respect to the Castle, Ward has not presented sufficient evidence to create a genuine issue of material fact of whether the former Port Director Don Nay had the authority to allow and authorized the Castle to rest in the location from which it was seized.
In addition, the Port was not required to seek an injunction in order to enforce a violation of Unified Port District Code (“UPD”) section 4.35 because UPD section 8.25 was in existence at the time of the seizure of the Castle, and section 8.25 did not require the Port to seek an injunction. Although a report issued by the Port implied that an injunction was the only means of enforcement for section 4.35, the report does not supercede or replace the ordinances that were in effect and applicable at the time of the seizure.
UPD section 8.25(a)(5) states that California’s Harbor and Navigation Code 500 et seq. applies to vessels that are registered with the Department of Motor Vehicles (“DMV”). The Castle was registered with the DMV. However, section 522 of the Harbor and Navigation Code does not apply to the factual circumstances in this case because it pertains only to vessels that have been abandoned and were without a watchman. See Cal. Harb. & Nav. Code § 522. Likewise, section 526 applies only to abandoned vessels. See Cal. Harb. & Nav.Code § 526. The Castle, however, was not impounded for being abandoned, and it had a watchman, James Morgan, *186 who was present during the seizure. Sections 522 and 526 refer to section 504. Therefore, section 504 does not apply because Ward has not established that this case falls within the ambit of either section 522 or 526 in the first instance.
Pursuant to UPD section 8.25(a)(4), the Port had the authority to seize and destroy the Castle because it had attempted to locate the registered owner, Kathleen Pierce (“Pierce”), but was unable to do so due to her own negligence in failing to update her address, and the watchman, James Morgan, was aware of the seizure and was informed via letter that the owner could claim the Castle. James Morgan, and his grandson, owner Matthew Morgan, were the persons who had licensed use of the Castle to Ward. Although James Morgan denies receiving the letter, the Port stored the Castle well beyond the thirty days required, and neither owner nor their watchman made any attempts to obtain the Castle or otherwise contest its impoundment during the approximately six months that it was held.
Ward’s equal protection claim fails as a matter of law. “To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.” Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998). “ ‘Discriminatory purpose,’ however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part ‘because of,’ not merely ‘in spite of,’ its adverse effects upon an identifiable group.” Pers. Adm’r of Mass. v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (citations omitted).
Ward’s evidence of previous discriminatory actions of Port employees is insufficient to raise a genuine issue of material fact that the Port acted with discriminatory intent in this instance. Mere knowledge of the possible consequences of enacting the section is insufficient to establish discriminatory intent. Additionally, there is no evidence of a racially disproportionate impact. Finally, there is a lack of proximity in time between Ward’s use of the vessel and the enactment of the ordinance.
Because Ward’s evidence was insufficient to create a genuine issue of material fact that the UPD sections imposed racial classifications, the strict scrutiny analysis does not apply and the district court did not err by applying the rational basis test. See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). Moreover, it is clear that UPD section 4.36 was enacted for a legitimate purpose. The 65-foot limit on vessels was rationally related to a legitimate government objective of making space in San Diego Bay to accommodate traffic and recreational vessels.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.