NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2009
Decided November 20, 2009

**Before**

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

PHILIP P. SIMON, *District Judge**

No. 08-4051

| | |
|---|---|
| EARL ROME, as the Special Administrator for the Estate of Christine Rome, | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| *Plaintiff-Appellant*, | |
| *v.* | |
| | No. 3:05-cv-50136 |
| RICHARD A. MEYERS, in his official capacity as Sheriff of Winnebago County, | Frederick J. Kapala, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Plaintiff Earl Rome, acting as Special Administrator for the Estate of Christine Rome, his deceased wife, appeals the district court's grant of summary judgment on his 42 U.S.C. § 1983 claim against Richard A. Meyers in his official capacity as Sheriff of Winnebago County, Illinois. The complaint alleges that Meyers failed to provide adequate training to the correctional officers at the Winnebago County Jail and that this failure prevented Christine Rome ("Rome") from receiving proper medical care during her period of incarceration, which in turn caused Rome's wrongful death. Finding no error below, we affirm.

---

* Of the Northern District of Indiana, sitting by designation.

## I. Background

We begin with a brief review of the tragic circumstances that gave rise to this litigation. On July 5, 2003, Rockford Police arrived at the residence of Christine and Earl Rome in response to a report that Rome was behaving in a disorderly manner. The police observed Rome outside her home—she was walking around naked, yelling, and talking to herself. When Rome was informed that she was to be arrested for disorderly conduct, she began yelling at the officers and assumed a "fighting stance."

Rome's combative behavior continued as she was processed through the Winnebago County Jail. Rome refused to sign any paperwork or answer any questions about her medical history. Although Rome was placed in a special cellblock for inmates under observation and continued to act in a bizarre and unruly manner, she did not receive any medical care for six days. On July 11 nurses from Health Professionals, Ltd., the independent medical services provider hired by the Winnebago County Jail to handle the medical treatment of its inmates, began administering prescription medicine to Rome. This treatment continued for the next two days, although it was evidently hindered by a variety of factors, including Rome's refusal to take the medication and an inadequate supply of some of the prescribed medicines.

Dan Feigel, a court-appointed psychologist, evaluated Rome on July 11. Feigel noted that Rome would not wear clothes, refused to cooperate with correctional officers, and resisted taking her medications. Feigel also indicated that Rome was not in contact with reality, was responding to auditory hallucinations, and would continue to yell and scream throughout most of the day.

Rome's unsound mental condition was also evidenced by her living conditions. On July 14 correctional officers observed that Rome had food all over her body and that her cell reeked of urine, feces, and old food. Rome was forcibly transported to the shower room where she was left to sit under the streaming water for 15 minutes while her cell was cleaned.

It was not until July 17 that Rome finally came under the care of a physician on the medical staff of the Winnebago County Jail. As a result of this examination, Rome was referred to the emergency department at Swedish American Hospital in Rockford for further observation of her hydration levels, mental illness, and left knee. Rome remained at the hospital from July 17 until July 23, at which time she experienced renal failure and died. This litigation then ensued.

## II.  Discussion

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in favor of Earl Rome, the nonmoving party.  *Clancy v. Geithner*, 559 F.3d 595, 599 (7th Cir. 2009).  As the district court correctly observed, the claims against Meyers, acting in his official capacity as Sheriff, are treated as claims against Winnebago County itself.  *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).  Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy.  *Id.*  In order to survive summary judgment on a § 1983 official-capacity claim, the plaintiff must present evidence demonstrating the existence of an official custom or policy and that the custom or policy was the cause of the alleged constitutional violation.  *Id.*

The Supreme Court has stated that under limited circumstances, a municipality's failure to train may amount to an official custom or policy that can serve as the basis for liability under § 1983.  *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  Establishing municipal liability on the failure to train requires proof of "deliberate indifference" to the rights of persons likely to come in contact with the municipality's employees.  *Id.* at 388.  We have held that such proof can take the form of either "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers."  *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029-30 (7th Cir. 2006).

The estate was unable to satisfy either method of proof articulated in *Sornberger*.  With respect to the first, the district court correctly concluded that the estate failed to present sufficient evidence that either (a) the correctional officers at Winnebago County Jail received inadequate training in how to respond to medical situations, or (b) it was foreseeable that an inmate suffering from considerable mental illness could face imminent death due to *some other* physical ailment.  As the estate concedes, Meyers did have policies in place instructing his officers how to identify and care for inmates with medical issues.  Furthermore, correctional officers were required to attend training sessions that included instruction on how to deal with inmates with mental-health issues.  Clearly the Winnebago County Jail could have done a much better job handling Rome's condition.  But the estate fails to identify any meaningful systemic problem with the way in which these correctional officers are trained.

The estate fares no better with *Sornberger*'s second method of proof.  Indeed, the estate does not identify any other alleged constitutional violations that the correctional officers of the Winnebago County Jail have committed.  Accordingly, the district court properly entered summary judgment in favor of Meyers.

AFFIRMED