IKUTA, Circuit Judge,
dissenting in part:
Simply put, to state a claim under § 1983 against a government official, a plaintiff must allege that the official’s “own misconduct” violated the plaintiffs constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). What the plaintiff must plead and prove “will vary with the constitutional provision at issue,” based on the Supreme Court’s decisions regarding what conduct violates that particular provision. Id. at 676, 129 S.Ct. 1937. But the Supreme Court is quite clear that “supervisory liability” is a “misnomer” in § 1983 cases, and that officials “may not be held accountable for the misdeeds of their agents.” Id. at 677, 129 S.Ct. 1937.
The majority muddles and obscures this simple principle. Plaintiffs’ complaint adequately alleges that Vincent Martorello, OSU’s facilities services director, violated their First Amendment rights under § 1983 by personally and arbitrarily limiting The Liberty’s distribution on campus. But their complaint nowhere indicates how OSU’s president, Ed Ray, and the vice president of finance and administration, Mark McCambridge, also violated those rights through their “own individual actions.” Id. at 676, 129 S.Ct. 1937. The majority considers it sufficient that Ray and McCambridge “knowingly acquiesced” in Martorello’s actions. Maj. op. at 1075. Under Iqbal, however, an official is not *1080 liable under § 1983 for simply knowing about a lower ranking employee’s misconduct and failing to act. In holding otherwise, the majority resurrects the very kind of supervisory liability that Iqbal interred. I disagree with this departure from Iqbal.
I
Iqbal made it clear that a supervisor, like any other official, “is only liable for his or her own misconduct,” id. at 677, 129 S.Ct. 1937. Since the Supreme Court clarified this point, we have not held an official liable for inaction in the face of someone else’s wrongdoing unless the official had a legal duty to act. Such a duty arises under only two narrow exceptions. The first exception applies when a statute expressly imposes the duty. See Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir.2011). In Starr, the prison sheriff was “required by statute to take charge of and keep the county jail and prisoners in it, and [was] answerable for the prisoner’s safekeeping,” and therefore was liable under § 1983 for supervisory omissions that would likely enable subordinates to commit a constitutional injury. Id. (quoting Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991)). The second exception applies when the courts have recognized a legal duty arising “by virtue of a ‘special relationship’ between state officials and a particular member of the public.” Ting v. United States, 927 F.2d 1504, 1511 (9th Cir.1991). Ting held that law enforcement officers may be held liable under § 1983 for inaction that breaches their “constitutional duty to protect those persons in [their] custody whom [they] know[ ] to be under a specific risk of harm from themselves or others in the state’s custody or subject to its effective control.” Id. (internal quotation marks omitted); see also Preschooler II v. Clark Cnty. Sch. Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir.2007) (school officials may be held liable for breaching a legal duty to report abuses committed by a subordinate or for failing to take corrective action). In sum, for an official’s inaction to deprive plaintiff of constitutional rights under color of law, the official must fail to act when the law requires action. Cf. King v. Zamiara, 680 F.3d 686, 706 (6th Cir.2012) (“Liability [under § 1983] will not lie absent active unconstitutional behavior; failure to act or passive behavior is insufficient.”).
Neither exception applies here. Plaintiffs do not allege that Ray or McCambridge had a legal duty to stop Martorello from continued enforcement of his newsbin policy, that they exerted any control over the decisions of the facilities department, or that their failure to intervene in the dispute between Plaintiffs and Martorello violated any law, statute, or even university requirement. This is not a case like Preschooler II, 479 F.3d at 1183, where there was a legal duty to report; or like Starr, 652 F.3d at 1208, where a statute imposed a duty to protect and to take corrective action; or even like Bergquist v. Cnty. of Cochise, 806 F.2d 1364, 1369-70 (9th Cir.1986), abrogated on other grounds by City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), where failure to train or supervise amounted to a policy or custom of deliberate indifference. Nor do plaintiffs allege that either Ray and McCambridge personally took an action that deprived plaintiffs of their constitutional rights. Rather, the complaint indicates that Ray and McCambridge did not even know about the removal of The Liberty’s bins until after the fact, at which point Ray stated that the removal of the bins was “news” to him, and McCambridge told plaintiffs that Martorello would be the “point of contact” with respect to further inquiries. Nor does the complaint allege that either official developed or enforced the newsbin policy, which *1081 was promulgated by the facilities department, and enforced by Martorello. In sum, the complaint merely recites “the organizational role of the[ ] supervisors,” and makes “no allegation that the supervisors took any specific action resulting in” the constitutional violation. Moss v. U.S. Secret Serv. (Moss II), 675 F.3d 1213, 1231 (9th Cir.2012) (emphasis in original). This is not sufficient to state a claim under § 1983.
The majority misses this central point because it focuses solely on one component of a § 1983 claim: the proper mental state for First Amendment claims. The majority’s detailed and elaborate discussion of this issue, see Maj. op. at 1070-75, boils down to the simple, though erroneous, proposition that a plaintiff can adequately allege a § 1983 claim for violation of that plaintiffs First Amendment rights merely by alleging that the official had knowledge of such violation. The majority brushes aside § 1983’s requirement that a defendant engage in conduct that “subjects, or causes to be subjected” a plaintiff to a deprivation of constitutional rights, and instead holds it suffices if a supervisory official “knowingly acquiesces” in the misconduct of a lower ranking employee. Maj. op. at 1075. But of course, “acquiescence” is merely a way to describe knowledge and inaction. See Webster’s Third New Int’l Dictionary 18 (3d ed.2002) (defining “acquiescence” as “passive assent or submission.”). The word “acquiescence” adds nothing to the mental state of “knowledge” unless the official has a legal duty not to acquiesce. Further, the majority erroneously implies that an allegation of “knowledge” suffices to establish the causation element of a § 1983 claim, namely, that the official caused the plaintiffs injury. The majority relies on a novel and somewhat impenetrable formulation that “duty” is generally equivalent to acting with a specified state of mind, and this duty “eclipses” proximate cause where the plaintiff acts with knowledge that a violation may occur. Maj. op. at 1072 n. 12. Because (in the majority’s view) the mental state of knowledge stands in for both misconduct and causation, the plaintiffs can state a § 1983 claim by alleging only that a supervisor had knowledge of a subordinate’s misconduct and took no action.
This is not enough. While plaintiffs here must plead the elements of a First Amendment violation, including mental state, they must also plead that each official acted in a way that “subjected], or cause[d] to be subjected,” a citizen to the deprivation of First Amendment rights. 42 U.S.C. § 1983. Plaintiffs here did not allege that Ray or McCambridge engaged in any misconduct or that these officials caused their injury. Therefore, the complaint in its current form does not meet the bare minimum for stating a First Amendment claim under § 1983 against Ray or McCambridge, and this claim must be dismissed.[1]
The majority reaches a contrary determination only because it smuggles respondeat superior back into our § 1983 jurisprudence. In place of personal misconduct and causation, the majority substitutes mere knowledge of a lower-ranking employee’s misconduct. But this is the very standard Iqbal rejected, because it makes officials responsible for lower-ranking employees’ misdeeds merely by virtue of the officials’ positions in the organization. By adopting this standard, the majority returns us to pre-Iqbal jurisprudence and revives vicarious liability, at least for First Amendment claims. Because this is contrary to Iqbal’s ruling *1082 that “each Government official, his or her title notwithstanding, is only liable for his or her own misconduct,” 556 U.S. at 677, 129 S.Ct. 1987, I dissent.

. I would dismiss plaintiffs' equal protection claim against Ray and McCambridge on the same grounds. See Iqbal, 556 U.S. at 676, 129 S.Ct. 1937.