[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13565

_____

ZABORA BROWN,
Individually, and as the Natural Parent and
as next friend Antraveious Payne,
ANTRAVEIOUS PAYNE,

                                        Plaintiffs-Appellants,

*versus*

CITY OF ATLANTA,
A Municipal Corporation of the State of Georgia,
MATTHEW JOHNS,
Individually and in his official capacity as a
Police Officer of the City of Atlanta Police Department,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-04850-MLB

_____

Before BRANCH, GRANT, Circuit Judges, and SCHLESINGER,[*] District Judge.

PER CURIAM:

Plaintiffs-Appellants Zabora Brown and Antraveious Payne appeal an order of the district court granting summary judgment for the Defendant-Appellee City of Atlanta ("City").[1] Following oral argument and a review of the record, we affirm.

On September 15, 2016, two Atlanta Police Officers spotted a black BMW with a stolen tag during their regular patrol. Officers pursued the vehicle, reaching speeds of around 110 mph and travelling on both highway and surface roads through commercial and residential areas. Officer Matthew Johns, who was assigned to a specialized unit of the Atlanta Police Department ("APD") known as the Atlanta Proactive Enforcement and Interdiction Unit

_____

[*] The Honorable Harvey Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

[1] Brown brought this suit as the natural parent and next friend of Payne. The district court granted Payne's motion to join this matter as an interested party when he reached the age of majority.

("APEX"), heard radio calls about the pursuit. Officer Johns joined the chase when it passed his location in contravention of a direct order that no APEX officers get involved.

After about ten minutes, a Georgia State Patrol Officer became involved with the pursuit and successfully PIT maneuvered the black BMW. Once the suspects were cornered, Officer Johns moved into position to apprehend occupants of the passenger side. The occupants of the BMW exited the vehicle; without police instruction, each chose to lay face-first on the ground. Payne exited the passenger side of the vehicle.

Officer Johns ran up to Payne, kicking him in the head. Officer Johns then used his foot, lifting it vertically and stomping down on the back of Payne's head as Payne lay face down on the ground. Officer Johns knelt on Payne's back and struck him in the left side of his body while trying to handcuff him. He punched Payne again in the head with a closed left-handed fist. As Officer Johns put Payne's left wrist in handcuffs, he punched him several more times in the abdomen. Throughout this encounter, Payne did not attack Officer Johns or resist the arrest. In total, Officer Johns kicked and punched Payne in the head, neck, and torso for thirty-six seconds. Dashcam footage captured most of the interactions between police and the occupants of the car immediately following the chase.

APD officers placed the suspects under arrest as other officers arrived on the scene. Within a minute of the stop, a Senior Patrol Officer arrived and saw blood on Payne's mouth and near one

of his ears. She called for an ambulance to take Payne to the hospital for evaluation and treatment. Payne received injuries and abrasions to his head and face and suffered a concussion that required an overnight hospital stay.

Following the incident, a Fulton County grand jury returned an indictment against Officer Johns, charging him with four counts of aggravated assault, two counts of making false statements and writings, and two counts of violating his oath of office. Officer Johns pleaded guilty to all counts in the indictment. After accepting the guilty plea, the Superior Court sentenced Officer Johns to twenty years in prison, to serve five years.

In November 2017, Brown brought this action against the City and former APD Officer Johns, pursuant to 42 U.S.C. §§ 1983 and 1988 as well as the Fourth and Fourteenth Amendments to the Constitution of the United States. Payne and Brown sued Officer Johns under § 1983 for excessive force and the City seeking to impose municipal liability. For the municipal liability claim, Brown and Payne alleged APD officers acted pursuant to customs and practices in a manner that violated the constitutional rights of citizens. They claimed the City failed to adequately train, supervise, discipline, and screen officers for hiring. The parties all moved for summary judgment. The district court denied the cross motions for summary judgment on the excessive-force claims. But the district court granted the City's motion for summary judgment on municipal liability, concluding Plaintiffs had put forth "no evidence

or 'specific facts' to support their sweeping" municipal liability theory. Plaintiffs now appeal.

Brown and Payne raise two issues contending the district court: (1) erred in its interpretation and application of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and (2) misapplied the summary judgment standard. This Circuit reviews rulings on summary judgment *de novo*, applying the same legal standard as the district court. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

Under *Monell*, a municipality can be liable for an employee's unconstitutional action if the action is directly caused by the municipality. 436 U.S. at 690. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Simple respondeat superior or vicarious liability will not attach under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). It must be the execution of the government's policy or custom that causes the injury. *Id.* Stated otherwise, the municipal policy or custom must be "the moving force behind the [constitutional] violation." *Gold v. City of Miami*, 151 F.3d 1346, 1354 (11th Cir. 1998).

The deliberate indifference standard applies to a failure to train employees or properly screen new applicants. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997); *Canton*, 489 U.S. at 389. "Only where a municipality's failure to train

its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Canton*, 489 U.S. at 389. Failing to adequately scrutinize an applicant's background will constitute deliberate indifference "where adequate scrutiny of the applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 398. Deliberate indifference is necessary because in a broad sense, "every injury is traceable to a hiring decision." *Id.* at 415.

Of the issues raised in the briefs, only three warrant in-depth discussion here.[2] The first is whether the City failed to adequately train its officers. Brown and Payne presented two witnesses—Officer Johns and an expert witness—who they maintain create a factual question about whether officers are trained to kick and strike suspects, or whether Officer Johns's actions were a conscious choice to violate APD policy. The expert testified that the APD "regularly teaches officers to use the very physical techniques," employed by Officer Johns and that Officer Johns "should not have been fired" because "he complied with the policies and procedures

---

[2] Plaintiffs-appellants' other arguments are that the district court misapplied the law or failed to consider material evidence, but we do not need to assess these arguments as we review their claims *de novo* in this appeal.

21-13565                Opinion of the Court                    7

that were written by the APD." The district court acknowledged this testimony but dismissed it because the APD, through its policies, authorizes the use-of-force techniques at issue only when the subjects resist arrest. Video evidence presented to the district court showed Payne did not resist arrest during the incident. Thus, the district court reasoned there was no genuine issue of material fact and the claim failed.

The district court properly rejected testimony from Officer Johns and the expert that Officer Johns was acting under APD policies and training when he used excessive force against Payne. At the time of the injury, APD policy allowed force that is reasonable and necessary to affect an arrest, to defend the officer or another from physical assault, or to accomplish lawful objectives. The video shows that Payne laid down on the ground and did not resist arrest after he exited the vehicle. No other officer on the scene used such force in the arrest—to the contrary, the Senior Patrol Officer promptly called an ambulance for Payne once she saw blood. Given the videos' contradiction of the testimony that Officer Johns was complying with the APD's policies and procedures, the district court's conclusion that Brown and Payne could not point to a policy, practice, or custom that directly caused Payne's injuries is supported by the record. *See Scott v. Harris*, 550 U.S. 372, 379 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Second, Brown and Payne maintain the district court erred in holding the evidence insufficient to support a finding that the APD failed to adequately investigate Officer Johns's background—specifically his military and psychological history—before hiring him. Payne and Brown maintain the APD's failure to investigate and evaluate Officer Johns for PTSD was the moving factor behind his use of excessive force.

The district court did not err in finding that Payne and Brown failed to present sufficient facts to support their claims. In October 2009, Dr. Joseph Hill conducted a pre-hiring psychological evaluation of Officer Johns on behalf of the APD. The psychological evaluation covered the broad functioning range of the applicant, across any disorder, and any type of dysfunction and psychological services, including PTSD. As part of his screening, Dr. Hill reviewed verified information, employment history, educational background, and military experience.

During his evaluation and screening, Officer Johns denied he had trouble sleeping, had intrusive thoughts, had psychological issues, or took medication for psychological issues. Officer Johns reported no PTSD symptoms to Dr. Hill during the psychological evaluation for the APD. Dr. Hill ultimately reported no indication of PTSD based on his findings from the evaluation.

There was no evidence the APD's screening of Officer Johns before hiring constitutes deliberate indifference. Given his responses to the psychological evaluation conducted before hiring–which screened for PTSD–his use of excessive force against

Payne was not a plainly obvious consequence of the APD's decision to hire him. There is no genuine issue of material fact, and the district court did not err in granting summary judgment. *See Brown*, 520 U.S. at 398.

Lastly, Plaintiffs-appellants contend that the City failed to adequately supervise Officer Johns. As we have established, deliberate indifference requires the supervising entity to know that enhanced supervision is needed, *see Bd. of Cnty. Comm'rs*, 520 U.S. at 407 ("[A municipality's] continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."), but the record is clear that the City was not aware that Officer Johns required additional supervision. Accordingly, we conclude that the City was not deliberately indifferent as to Officer Johns's supervision.

**AFFIRMED.**